UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON

FRANKIE ROSANNA AYERS,

     **Plaintiff,**

v.

FRANK J. BISIGNANO, Commissioner
of Social Security,[1]

     **Defendant.**

CIVIL ACTION NO. 6:25-39-KKC

<u>OPINION AND ORDER</u>

*** *** ***

This matter is before the Court on Plaintiff Frankie Rosanna Ayers Motion for Summary Judgement. (R. 6.) Ayers brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision denying her claim for Supplemental Security Income ("SSI"). The Court, having reviewed the record, DENIES Plaintiff's motion (R. 6) and AFFIRMS the Commissioner's decision.

## I. BACKGROUND

In March 2022, Ayers filed her claim for SSI. At the time of her application for SSI, Ayers was fifty years old. Administrative Record (hereinafter "AR") 26. Ayers has a limited education, as she attended school through the eighth grade. (AR 26.) Ayers has no past relevant work experience. (AR 26.)

Ayers' claim for SSI was denied initially on September 14, 2022 (AR 113–117), and again upon reconsideration on December 14, 2022 (AR 121–123). After a hearing held on November 6, 2023, the Administrative Law Judge ("ALJ") issued an unfavorable decision on

---

[1] Frank J. Bisignano has replaced Leland Dudek as the Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), Bisignano is hereby substituted as the defendant in this action.

January 11, 2024, determining that Ayers was not disabled. (AR 15–33.) Ayers subsequently requested review of the unfavorable determination which was later denied by the Appeals Council on January 6, 2025. (AR 1-7) This appeal followed.

## II.  REVIEW PROCESS AND ALJ DECISION

### A.  Standard of Review

This Court's review of the Administrative Law Judge's decision is limited to determining whether it "is supported by substantial evidence and was made pursuant to proper legal standards." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). The substantial evidence threshold "is not high," and "defers to the presiding ALJ, who has seen the hearing up close." *Biestek v. Berryhill*, 587 U.S. 97, 98, 103 (2019). The substantial evidence standard—more than a mere scintilla of evidence but less than a preponderance, *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)—is even less demanding than the "clearly erroneous" standard that governs appellate review of district court fact-finding, which is itself a deferential standard. *Dickinson v. Zurko*, 527 U.S. 150, 152–53 (1999).

In reviewing the decision of the Commissioner, courts do not try the case de novo, resolve conflicts in the evidence, or assess questions of credibility. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). Similarly, courts do not reverse findings of the Commissioner or the ALJ merely because the record contains evidence—even substantial evidence—to support a different conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Rather, courts must affirm the ALJ's decision if substantial evidence supports it, even if the court might have decided the case differently if in the ALJ's shoes. *See Longworth v. Comm'r of Soc. Sec.*,

402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

### B. ALJ Process

To determine whether a claimant has a compensable disability under the Social Security Act, the ALJ applies a five-step sequential process. 20 C.F.R. § 404.1520(a)(1), (4); *see also Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 n.6 (6th Cir. 2016) (describing the five-step evaluation process). The five steps are:

*Step 1*:  If the claimant is doing substantial gainful activity, the claimant is not disabled.

*Step 2*:  If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

*Step 3*:  If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his or her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

*Step 4*:  If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

*Step 5*:  If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x. 162, 169 (6th Cir. 2016) (citing *Rabbers*, 582 F.3d at 652).

If, at any step in the process, the ALJ concludes that the claimant is or is not disabled, the ALJ can then complete the "determination or decision and [the ALJ] do[es] not go on to the next step." 20 C.F.R. § 404.1520(a)(4). In the first four steps of the process, the claimant bears the burden of proof. *Sorrell*, 656 F. App'x. at 169 (quoting *Jones v. Comm'r of Soc. Sec.* 336 F.3d 469, 474 (6th Cir. 2003)). If the claim proceeds to step five, however, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that

3

accommodate the claimant's residual functional capacity . . . and vocational profile." *Id.* (citation and quotation marks omitted); *see also* 20 C.F.R. § 404.1520(g)(1).

### C. ALJ Decision

In denying Ayers' claim, the ALJ engaged in the five-step sequential process set forth in the regulations under the Social Security Act 20 C.F.R. § 404.1520(a)-(e).

At step one, the ALJ determined that Ayers has not engaged in substantial gainful activity since August 6, 2022, the amended alleged onset date. (AR at 21.)

At step two, the ALJ determined that Ayers suffers from the following severe impairments: degenerative disc disease of the lumbar spine, borderline intellectual functioning, and an adjustment disorder (20 C.F.R. 416.920(c)). (AR at 21.)

At step three, the ALJ found that Ayers does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR at 21.)

Before proceeding to step four, the ALJ determined that Ayers has the residual functional capacity (RFC) to perform "light" work as defined by 20 C.F.R. § 416.967(b) with the following limitations:

> she can frequently climb ramps, stairs, ladders, ropes, and scaffolds. She can frequently balance, stoop, kneel, crouch, and crawl. She must be allowed to wear a back brace while working. Mentally, she can understand, remember, and carry out simple instructions and procedures with brief learning periods. She can maintain concentration and persistence towards simple tasks for two-hour segments during an eight-hour workday. She can interact as needed with supervisors and peers for task completion and relates adequately with others. She can adapt to situational conditions and changes with reasonable support.

(AR at 23–26.)

At step four, the ALJ found that Ayers has no past relevant work under 20 C.F.R. 416.965. (AR at 26.)

4

At step five, the ALJ determined that, given Ayers' age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform and, thus, is not disabled.  (AR at 27.)

The ALJ's decision became the final decision of the Commissioner when the Appeals Council subsequently denied Ayers' request for review. *See* 20 C.F.R. § 422.210(a); (AR 1–7). Ayers has therefore exhausted her administrative remedies and filed a timely appeal in this Court.

### III.   ANALYSIS

Ayers challenges the ALJ's ruling on three grounds. She contests the ALJ's evaluation of the medical evidence concerning her mental abilities, the ALJ's evaluation of third-party observations, and claims that remand is warranted because the Commissioner failed to obtain updated Vocational Expert evidence. (R. 6 at 1.) The Court will address each of Ayers' arguments in turn.

### A.  ALJ's Evaluation of Medical Evidence

Ayers argues that the ALJ failed to adequately evaluate the medical opinion evidence and prior administrative medical findings concerning her mental abilities. (R. 6 at 6.) Specifically, Ayers takes issue with the fact that the ALJ "cobbled together the opinions of the state agency psychologists with the opinion evidence from Dr. Ford." (*Id.* at 8.) Ayers asserts that the ALJ was required to bifurcate the analyses of Dr. Ford and the State examiners to evaluate the supportability and consistency of each opinion. (*Id.*)

In this case, the new regulations for evaluating medical opinion evidence apply because Claimant filed her applications after March 27, 2017. *See* 20 C.F.R. § 416.920c. The new regulations specify that an ALJ will not give any specific evidentiary weight to any medical opinion, even the opinions of a claimant's treating physician. *Id.* ALJs instead evaluate the "persuasiveness" of medical opinions using five factors: (1) supportability; (2)

5

consistency; (3) relationship to the claimant; (4) specialization; and (5) other factors. *Id.* (c)(1)-(5). Of these factors, supportability and consistency are the most important. *Id.* (a), (b)(2). The regulations, accordingly, require ALJs to explain how they considered the supportability and consistency factors in their determination. *Id.* (b)(2). Comparatively, ALJs "may, but are not required to, explain" their consideration of the factors (3)-(5). *Id.*

In assessing a medical opinion's "supportability," "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." *Id.* (c)(1). And the "consistency" factor denotes the extent to which the medical opinion "is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (c)(2). To further illuminate this distinction, "supportability" relates to the objective medical evidence and supporting explanation provided by a medical source to bolster their *own* opinion; by contrast, "consistency" relates to the relationship of a medical source's opinion to *other* medical opinions and evidence of record. *Id.* (c)(1)-(2).

"[T]he measuring stick for an 'adequate discussion' [of these factors] is whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of his finding as to whether the particular medical opinion was supported by substantial evidence." *Terhune v. Kijakazi*, No. 3:21-37-KKC, 2022 U.S. Dist. LEXIS 130309, 2022 WL 2910002, at *3 (E.D. Ky. July 22, 2022) (citations omitted). It is incumbent upon the ALJ to "explain his credibility determinations in his decision such that it 'must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007).

6

Ayers is correct that the ALJ grouped his discussion of the state agency psychological consultants and Dr. Ford's opinions into a single paragraph. The state agency consultants found that Ayers had no more than moderate limitations in mental functioning, specifically in the areas of understanding, remembering, and applying information and in concentrating, persisting and maintaining pace. (AR at 26.) On the contrary, Dr. Ford found that Ayers had up to marked limitations in her ability to tolerate stress and pressure as well as moderate limitations in her ability to interact appropriately with others. (AR at 26.) The ALJ discussed these differences together in his decision. (AR at 26.)

Regardless of any challenges to the organization and structure of the written decision, the ALJ adequately addressed both the supportability and consistency of the evidence. Specifically, after carefully considering the entire record, he found that "no more than moderate limitations in mental functioning are *supported by and consistent with* the objective medical evidence." (AR at 26.) He cites as evidence there being no psychiatric hospitalizations, no participation in outpatient counseling, unremarkable mental status exams, and good control of symptoms with medication management through a primary care provider. (AR at 26.) Because of this evidence, he reasonably found as persuasive the state agency consultants' opinions as they were consistent with the evidence in the record showing that Ayers had only moderate limitations in mental functioning. The ALJ also reasonably concluded that Dr. Ford's opinion of Ayers' mental abilities was unpersuasive because the opinion was inconsistent with the objective medical evidence. (AR at 26.)

Although the ALJ did not address Dr. Ford and the state agency consultants' opinions in separate paragraphs, it was unnecessary in this instance. By addressing the weight of the medical evidence in the record and articulating how that evidence aligned with the state agency consultants rather than Dr. Ford, the ALJ explained his decision well enough to be understood by appellate reviewers. *Rogers,* 486 F.3d at 248. Because the ALJ adequately

addressed the supportability and consistency of the medical opinions with the medical evidence sufficient to enable meaningful judicial review, the ALJ's determination regarding Ayers' mental abilities is supported by substantial evidence.

### B. ALJ's Evaluation of Third-Party Observations

Ayers also argues that the ALJ failed to adequately evaluate the third-party observations in accordance with SSR 16-3p. (R. 6 at 9.) Specifically, Ayers takes issue with the fact that the ALJ did not address the consistency of the third-party observations with the record. (*Id.*)

For claims filed on or after March 27, 2017, evidence from nonmedical sources should be considered in accordance with 20 C.F.R. §§ 404.1502(e) and 404.1513(a)(4) as well as SSR 16- 3p. Pursuant to SSR 16-3p(2)(c), "The adjudicator will consider any personal observations of the nonmedical source in terms of how consistent those observations are with a claimant's statements about his or her symptoms as well as with all of the evidence in the file." SSR 16-3p(2)(c). However, the ALJ is not required to articulate how he considered evidence from nonmedical sources with the same specificity required of medical sources. 20 C.F.R. § 416.920c(d).

The record reflects that Ayers' friend, Richard Sampson, provided many observations about Ayers' activities and behaviors. Mr. Sampson indicated he spends "4 or 5 hours" each day with her and that he was the one who assisted her in completing her initial application. (R. 6 at 9.) Mr. Sampson states that she is unable to read or write, that she only goes out "1 or 2 times a week," that she does not deal well with others, including family and authority figures, and that her abilities to handle stress and changes in routine were "no good." (*Id.*)

The ALJ adequately considered the third-party statement submitted by the claimant's friend, Richard Sampson. In the decision, the ALJ expressly noted: "The undersigned has also considered the third-party report of the claimant's friend, Richard Sampson, which tends

to reiterate her allegations." (AR 24.) Though concise, this articulation satisfies the substantial evidence standard.

The ALJ provided more than a mere scintilla of evidence demonstrating that Mr. Sampson's observations were taken into consideration. He found that Mr. Sampson's observations to mirrored the claimant's own allegations, which the ALJ determined were inconsistent with the record as a whole. This approach complies with Social Security Ruling 16-3p, which governs the evaluation of symptoms and does not require exhaustive analysis of nonmedical source statements.

Furthermore, the ALJ devoted several pages to a detailed discussion of the claimant's subjective complaints and explained why they were not fully supported by the objective medical evidence and other record evidence. (*See* AR. 23–26.) By explicitly stating that Mr. Sampson's report "tends to reiterate" the claimant's allegations, the ALJ effectively incorporated Mr. Sampson's observations into that broader credibility analysis. Because Mr. Sampson's statement duplicated the claimant's own assertions rather than introducing independent functional limitations or medical opinions, no additional articulation was required.

The ALJ's acknowledgment that he "has also considered" the third-party report, coupled with the thorough discussion of the RFC constitutes sufficient articulation to permit meaningful judicial review. Accordingly, the ALJ's treatment of Mr. Sampson's statement is supported by substantial evidence.

### C.  Remand Due to Failure to Obtain Updated Vocational Expert Evidence

Lastly, Ayers argues that remand is warranted given the Commissioner's failure to obtain updated Vocational Expert evidence in accordance with the recent issuance of Social Security Ruling 24-3p: *Use of Occupational Information and Vocational Specialist and*

*Vocational Expert Evidence in Disability Determination*, which rescinded and replaced the old Ruling, SSR 00-4p. (R. 6 at 10.)

There are numerous problems with Ayers' argument. First, The Ruling requires courts to review final decisions "using the rules that were in effect at the time we issued the decisions." SSR 24-3p n.1. The Ruling was not in effect when the ALJ conducted the hearing in this case nor was it in effect prior to January 6, 2025, the day the Appeals Council notified Ayers that it denied her request to review the ALJ decision. (R. 11 at 6.) Notably, Ayers does not argue that the ALJ failed to comply with SSR 00-4p, the applicable Ruling for her hearing.

Even if SSR 24-3p was applicable to her case, Ayers does not state how the ALJs decisions fails to align with the new standard. In fact, the new Ruling's requirements give even more leniency to the ALJ's discretion. SSR 00-4p required an ALJ to "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [the] VE and information in the Dictionary of Occupational Titles. Because the old requirements lead to "unnecessary remands" SSR 24-3p no longer requires ALJs to identify and resolve conflicts between information provided by VE and information in the DOT. In this case, there is no need for updated testimony or additional information. Accordingly, remand is not warranted here.

## IV.    CONCLUSION

For the foregoing reasons, and the Court being otherwise sufficiently advised, it is hereby ORDERED that:

(1)    The Plaintiff's Motion for Summary Judgment (R. 6) is DENIED;

(2)    The decision of the Commissioner is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

(3)    A judgment will be entered contemporaneously with this order.

This 10th day of November, 2025.



**Signed By:**

**_Karen K. Caldwell_**

**United States District Judge**